IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JASON SCOTT SILBE, )
)
    Plaintiff, )
)
vs. ) Civil No. 16-cv-532-JPG-CJP
)
NANCY A. BERRYHILL, Acting )
Commissioner of Social Security, )
)
    Defendant.[1] )

## **MEMORANDUM and ORDER**

In accordance with 42 U.S.C. § 05(g), plaintiff Jason Scott Silbe, represented by counsel, seeks review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## **Procedural History**

Plaintiff applied for disability benefits in November 2012 alleging disability beginning on October 18, 2010. After holding an evidentiary hearing, ALJ Kevin R. Martin denied the application in a decision dated January 20, 2015. (Tr. 20-30.) The Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final agency decision subject to judicial review. (Tr. 1.)

Plaintiff has exhausted his administrative remedies and has filed a timely complaint in this court.

## **Issues Raised by Plaintiff**

Plaintiff raises the following issues:

    1.     The ALJ failed to give "good reasons" for discounting the opinion of Dr. Davidson,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. *See* https://www.ssa.gov/agency/commissioner.html (visited Feb. 7, 2017). She is automatically substituted as defendant in this case. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

1

plaintiff's treating physician.

2. The credibility determination was erroneous.

## **Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A "physical or mental impairment" is an impairment resulting from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities and that is done for pay or profit. 20 C.F.R. §§ 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity ("RFC") and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008); *accord Weatherbee v. Astrue*, 649 F.3d 565, 568-69 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Secretary at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984); *see also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to understand that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive…." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Mr. Silbe was, in fact, disabled, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *See Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306

(7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence, *i.e.*, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### **The Decision of the ALJ**

ALJ Martin followed the five-step analytical framework described above. He determined that Mr. Silbe had not been engaged in substantial gainful activity since the alleged onset date and that he was insured for DIB only through December 31, 2014.

The ALJ found that plaintiff had severe impairments of degenerative disc disease; diabetes mellitus; psoriasis; inflammatory arthritis; mild bilateral carpal tunnel syndrome, status post release; mild osteoarthritis in both hands; low testosterone; sleep apnea; obesity; pancreatitis; anxiety; and depression. He found that these impairments do not meet or equal a listed impairment.

ALJ Martin concluded that plaintiff had the RFC to perform work at the light exertional level, limited to occasional climbing of ramps and stairs; no climbing of ropes, ladders and scaffolding; occasional balancing, stooping, kneeling, crouching, and crawling; frequent bilateral handling and fingering; and no concentrated exposure to respiratory irritants or to hazards such as unprotected heights. He also had mental limitations in that he was restricted to understanding,

remembering and carrying out simple instructions and only occasional interactions with coworkers, supervisors and the public.

Based on the testimony of a vocational expert (VE), the ALJ determined that plaintiff could not do his past work, but he could perform other jobs which exist in significant numbers in the national and local economies, and, therefore, he was not disabled.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

**1. Agency Forms**

Plaintiff was born in 1976 and was 34 years old on the alleged date of disability. (Tr. 198.) He was 6'1" and weighed 330 pounds in November 2012. (Tr. 202.) He stopped working in September 2010 when he was fired from his job. (Tr. 203.) He had a twelfth grade education and had worked as a line worker in factories and as a machine operator in heavy construction. (Tr. 203.)

In January 2013, plaintiff reported that he lived with his daughter in a rented trailer. His daughter was in the second grade. Plaintiff's mother came over during the day and did laundry, dishes, and cooking for plaintiff. He watched television and looked for a job on his computer. He was able to fix simple meals. On some days, his hands were so swollen that it was hard to do anything. (Tr. 236-38.)

**2. Evidentiary Hearing**

Plaintiff was represented by counsel at the evidentiary hearing in December 2014. (Tr. 39.)

Plaintiff testified that he was unable to work because of the effects of his diabetes, including numbness in his feet, dry mouth, and excessive urination. His psoriasis caused swelling in his hands. He had psoriasis on his hands, eyes, ears, all over his scalp, and his chin. He had a yeast infection. He had anxiety, acid reflux, arthritis in his neck, and sleep apnea. (Tr. 47.) He had pain in his back. (Tr. 58.)

Plaintiff had problems with anxiety since around 2000. He had fear of big crowds and new people. He took Wellbutrin and Xanax, prescribed by Dr. Davidson. He had been referred to a psychiatrist but had not gone because he did not "see the need." (Tr. 57-58.)

Mr. Silbe had health insurance through the state Medicaid program at the time of the hearing. He had been on Medicaid since 2011 or 2012. He had health insurance coverage while he was working. (Tr. 51.)

Plaintiff testified that he did not do much around the house. His mother came over on Tuesday and Saturday and did his housework. His mother did his grocery shopping. His neighbor did his yardwork. He took his daughter out to eat about once or twice a week, and they went to a movie about once a month. He did not use a computer, play video games or visit friends. He went to church on Sunday. (Tr. 60-63.)

A VE also testified. The ALJ asked the VE to assume a hypothetical question which corresponded to the RFC assessment. The VE testified that this hypothetical person could not do plaintiff's past work, but he could do jobs which exist in significant numbers, such as inspector and packer in the hand packer category, lamp tester, and housekeeper. Those jobs are light and unskilled. (Tr. 73-75.)

3.  **Medical Records**

Plaintiff was seen by Dr. Westphal for his psoriasis three times in 2010. He had thickened

6

psoriasis plaques on his elbows, the back of the hands and the right part of his scalp. He had some pain in his left elbow, which was possibly psoriatic arthritis. Dr. Westphal prescribed Clobetasol cream and injected Kenalog into the plaques. He showed "great improvement." (Tr. 326-28.)

Dr. Robert Davidson was plaintiff's primary care physician. Dr. Davidson saw plaintiff regularly from 2010 through 2014. Some of Dr. Davidson's notes are typewritten, but many are hand-written and all but illegible.

A note from August 24, 2010, says "able to work." (Tr. 515.)

Plaintiff alleges that he became disabled as of October 18, 2010. On October 19, 2010, he complained to Dr. Davidson of numbness in his hands, pain in his left elbow and shoulder, shortness of breath, and weakness in his left knee. Dr. Davidson planned to have an MRI of the knee. (Tr. 515.) There is no indication that the MRI was done.

On October 25, 2010, an electrodiagnostic study of the upper extremities was done. The needle EMG results were normal, but the nerve conduction study showed very mild bilateral median neuropathy at the wrists, *i.e.*, carpal tunnel syndrome.[2] There was no evidence of ulnar neuropathy at the elbow or cervical radiculopathy. (Tr. 574.)

In September 2011, plaintiff was hospitalized for several days with pancreatitis. This was treated with IV fluids, pain control and IV Levaquin, and resolved. Dr. Davidson noted that plaintiff was large and heavyset, and "quite muscular." He took weight lifting supplements, including amino acids and vitamins. (Tr. 543.) He also had elevated blood sugars, with possible new onset diabetes. (Tr. 547.)

Dr. Davidson noted in October 2011 that plaintiff had "a lot of anger" and needed more Xanax. He had severe psoriasis on his elbows. (Tr. 508.)

---

[2] Plaintiff testified that he made a workers' compensation claim for his carpal tunnel syndrome. He had surgery in 2011 and had no further problems from carpal tunnel syndrome. (Tr. 62).

In January 2012, Dr. Davidson saw plaintiff for aching pain in his hands. Dr. Davidson noted chronic problems of hypothyroidism, elevated blood sugar, acute pancreatitis, overweight, psoriasis, and primary generalized osteoarthritis. The assessment was chronic psoriasis, arthritis flare versus worse infection. Dr. Davidson prescribed Rocephin and Cipro. (Tr. 504-07.)

In February 2012, x-rays of the cervical spine showed mild to moderate disc space narrowing and osteophyte formation at C4-5, C5-6 and C6-7, with straightening of the lordotic curve.[3] (Tr. 538.)

On September 13, 2012, plaintiff told Dr. Davidson that he was under a lot of stress. He was looking for work and "gets discouraged." (Tr. 499.)

On September 19, 2012, plaintiff complained to Dr. Davidson of low back pain without radiation which started in the evening on a day when he had been lifting weights. He had decreased lumbar mobility, paravertebral muscle spasm and right lumbosacral tenderness. The diagnosis was acute lumbar strain caused by "strenuous weight lifting." Dr. Davidson recommended ice and rest, and prescribed Flexeril. Plaintiff was already taking Vicoprofen.[4] (Tr. 531-33.) In October 2012, plaintiff reported that his back was doing much better. However, he felt he was not getting enough testosterone and he felt depressed. (Tr. 498.)

At an office visit in December 2012, plaintiff complained of "not feeling well." He had a "paper from disability." His blood sugars were doing okay. He had pain in his left elbow, and Dr. Davidson suspected tennis elbow. (Tr. 615.)

Dr. Adrian Feinerman performed a consultative physical exam in February 2013. He found that plaintiff had a full range of motion of the neck and back but had some limitation of

---

[3] The ALJ mistakenly said that this study showed osteophyte formation at L4-5. See, Tr. 26. These x-rays were of the cervical spine, not the lumbar spine.
[4] Vicoprofen is a combination of hydrocodone and ibuprofen, and is an opioid pain medication. https://www.drugs.com/vicoprofen.html (visited June 1, 2017).

motion in the shoulders. Straight leg raising was negative. He had psoriasis on his hands and elbows with a few flakes on his eyelids. Muscle strength was strong and equal. Fine and gross manipulation were normal. Sensory examination was normal. (Tr. 592-600.)

In April 2013, plaintiff complained to Dr. Davidson of neck and back pain. He felt very tired and had poor balance. He wanted to get off Xanax. Dr. Davidson prescribed Amitriptyline (Elavil). (Tr. 608.) In August 2013, he complained of low back pain. Dr. Davidson noted paraspinal lumbar spasms. His weight was 344 pounds. He "still had generalized pains" and "cannot work." (Tr. 613.) The next month, he reported that he had been to the emergency room for blood sugars running in the 500s. (Tr. 613.)

Plaintiff went to the emergency room for high blood sugar in October 2013. He was supposed to be taking oral hypoglycemic medications but had been noncompliant with diet and exercise. (Tr. 674.)

Plaintiff went to the emergency room for high blood sugar in January 2014. He was on oral hypoglycemic medication for Type 2 diabetes. His A1C was 9.7%. He was given insulin and admitted for 23 hour observation for readjustment of his medicine and diabetic education. He had psoriatic lesions on his hands and face. He was discharged on insulin. (Tr. 649-53.) He was later seen by Dr. Davidson, but much of Dr. Davidson's note is illegible. (Tr. 614.) The next note, dated February 11, 2014, indicates that plaintiff had gained weight since starting insulin. He complained of a lot of pain in his hands, aching muscles, and feeling tired all the time. He was sent for a sleep study. (Tr. 616.)

Sleep studies in February and April 2014 showed that plaintiff had obstructive sleep apnea and that he benefitted from a CPAP machine. (Tr. 696-702.) At an April 2014 office visit, Dr. Davidson noted diabetes, lumbar strain, psoriasis, and psoriatic arthritis. (Tr. 686.)

In June 2014, Dr. Davidson noted moderately severe psoriasis on his hands. His blood sugars were occasionally low and he felt fatigued and depressed. (Tr. 685.)

On August 12, 2014, Dr. Davidson noted that testosterone "greatly helps how he feels." (Tr. 684.) About two weeks later, plaintiff saw Dr. Davidson for abdominal pain and nausea. He had been to a "fair" but had not eaten anything there. (Tr. 679.) On August 29, 2014, plaintiff said his "belly was a little better." He complained of painful joints and throbbing headaches. (Tr. 684.)

**4.     Dr. Davidson's Opinion**

Dr. Davidson assessed plaintiff's functional capacity by filling out a form in December 2013. He indicated diagnoses of type 2 diabetes, diabetic neuropathy, psoriasis, and psoriatic arthritis. Plaintiff also had arthralgias, fatigue and depression. He indicated that plaintiff was likely to experience more medical problems because diabetic neuropathy progresses. According to Dr. Davidson, plaintiff could sit for less than two hours total per day and could stand/walk for less than two hours total per day. He could occasionally lift less than five pounds. He could not bend, twist, climb or stoop. He was likely to miss more than three days of work per month because of his impairments. (Tr. 612.)

## Analysis

The Court turns first to plaintiff's challenge to the ALJ's credibility findings.

Plaintiff argues that the ALJ erred in his credibility determination because he failed to meaningfully consider the factors set forth in 20 C.F.R. § 404.1519 and SSR 96-7, and relied too heavily on his daily activities.

The credibility findings of the ALJ are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).

Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005), and cases cited therein.

SSR 96-7p requires the ALJ to consider a number of factors in assessing the claimant's credibility, including the objective medical evidence, the claimant's daily activities, medication for the relief of pain, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7p, 1996 WL 374186 at *3.[5]

The ALJ is required to give "specific reasons" for his credibility findings. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). It is not enough just to describe the plaintiff's testimony; the ALJ must analyze the evidence. *Id.*; *see also Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (The ALJ "must justify the credibility finding with specific reasons supported by the record."). If the adverse credibility finding is premised on inconsistencies between a plaintiff's statements and other evidence in the record, the ALJ must identify and explain those inconsistencies. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

Here, the reasons given by the ALJ for rejecting plaintiff's statements are not supported by the record and are not valid. ALJ Martin said that he found plaintiff not credible because of his daily activities, including weightlifting, and the fact that he was looking for work. (Tr. 27.)

The ALJ described plaintiff's daily activities as assisting in caring for his daughter, searching for jobs on a computer, watching television, attending church, preparing sandwiches,

---

[5] SSR 96-7p was superseded by SSR 16-3p, 2016 WL 1119029. SSR 16-3p became effective on March 28, 2016. *See* 2016 WL 1237954, setting forth the effective date. SSR 16-3p eliminates the use of the term "credibility," and clarifies that symptom evaluation is "not an examination of an individual's character." 2016 WL 1119029, at *1. SSR 16-3p continues to require the ALJ to consider the factors set forth above, which are derived from the applicable regulations. 2016 WL 1119029, at 5.

shopping for groceries, and weightlifting.

It is, of course, appropriate for the ALJ to consider daily activities when evaluating credibility, but "this must be done with care." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). The Seventh Circuit has called improper consideration of daily activities "a problem we have long bemoaned, in which administrative law judges have equated the ability to engage in some activities with an ability to work full-time, without a recognition that full-time work does not allow for the flexibility to work around periods of incapacitation." *Moore v. Colvin*, 743 F. 3d 1118, 1126 (7th Cir. 2014). That is exactly what the ALJ did here. He stated that plaintiff's "activities of daily living are consistent with the capacity for light work with the additional appropriate limitations." (Tr. 27.)

With the possible exception of lifting weights, plaintiff's activities do not add up to an ability to do light work. *See Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000) (holding that plaintiff's ability to care for her house and children did not contradict plaintiff's testimony that she was limited in performing prolonged sitting, standing and walking). Further, the ALJ ignored the evidence from both plaintiff and his mother that his mother did a substantial share of the household chores, shopping, cooking, and caring for plaintiff's daughter.

Defendant argues that there is conflict in the record regarding the amount of assistance provided by plaintiff's mother. She argues that Dr. Peterson, a psychologist who performed a consultative mental exam, wrote that plaintiff said that he cared for his daughter independently and that his mother was barely involved. *See* Doc. 23, p. 13, n. 1. However, the ALJ did not mention that statement made to Dr. Peterson, and defendant cannot rely on it to support the ALJ's decision. *Hughes v. Astrue*, 705 F.3d 276, 279 (7th Cir. 2013) ("Characteristically, and sanctionably, the government's brief violates the *Chenery* doctrine…."); *McClesky v. Astrue*, 606

F.3d 351, 354 (7th Cir. 2010) (It is "improper for an agency's lawyer to defend its decision on a ground that the agency had not relied on in its decision....").

The evidence of plaintiff's weightlifting is scant. The ALJ cited to the September 2011 reference to taking weightlifting supplements and to Dr. Davidson's note indicating that plaintiff strained his back lifting weights. (Tr. 27.) There is no evidence in the record that plaintiff regularly lifted weights. The ALJ did not ask him any questions about weightlifting at the hearing. The fact that he was taking weightlifting supplements does not mean that he was regularly lifting weights. The record only establishes that plaintiff lifted weights one time, and that he strained his back doing so.

Lastly, the fact that plaintiff was looking for work does not negate his claim of disability. In fact, even a person who is actually working may still be disabled. *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005).

The erroneous credibility determination requires remand. "An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding." *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014).

Reconsideration of plaintiff's credibility will also require a "fresh look" at the medical opinions and plaintiff's RFC. *Id.* It is therefore not necessary to analyze plaintiff's other points in detail. The Court nevertheless makes the following observations with regard to the weighing of Dr. Davidson's opinion.

"An ALJ who chooses to reject a treating physician's opinion must provide a sound explanation for the rejection." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). ALJ Martin dismissed Dr. Davidson's opinion because Dr. Davidson did not refer plaintiff to specialists for

13

further treatment to manage his pain and "did not try other medications" to treat his conditions. (Tr. 28.) The second reason is not supported by the record; Dr. Davidson did, in fact, change plaintiff's medications from time to time. The first reason is meaningless unless there was a medical reason to refer plaintiff to specialists, and this is a conclusion that the ALJ is not competent to reach in the absence of medical evidence. An ALJ errs when he "plays doctor." *See Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Jason Scott Silbe's application for social security disability benefits is **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE: June 7, 2017**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**
